UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

**Linval Buchanan**
Plaintiff, Pro Se
623 Beach 64th Street
Arverne, NY 11692

**25 CV 10362**

Plaintiff,

v.

ASSISTANT DISTRICT ATTORNEY RICHARD FARRELL, IN HIS INDIVIDUAL
AND OFFICIAL CAPACITIES;ASSISTANT DISTRICT ATTORNEY JOHN C.
CARROLL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;DETECTIVE
GREENE KUSH, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;SERGEANT
JOSEPH PISCATELLA, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;POLICE
OFFICER PAUL H. ALVA (TAX #963372), IN HIS INDIVIDUAL AND OFFICIAL
CAPACITIES;SERGEANT EVAN A. COUCH (TAX #965013), IN HIS INDIVIDUAL
AND OFFICIAL CAPACITIES;POLICE OFFICER KARISA M. CRAWFORD (TAX
#969610), IN HER INDIVIDUAL AND OFFICIAL CAPACITIES;SENIOR COUNSEL
JOSEPH ZANGRILLI, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;MURIEL
GOODE-TRUFANT, ACTING CORPORATION COUNSEL, IN HER INDIVIDUAL
AND OFFICIAL CAPACITIES;ASSISTANT CORPORATION COUNSEL HANNAH
OLEYNIK, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES;CITY OF NEW
YORK; PRIVATE-ACTOR DEFENDANTS: LYNN JEROME AND PAULA SINCLAIR,
DANIEL FRIEDMAN, Esq.
Defendants.

Case No.: _____
JURY TRIAL DEMANDED

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF
(42 U.S.C. §§ 1983, 1985, 1986, 1988; FIRST AND FOURTEENTH AMENDMENTS)

**COMPLAINT**

Plaintiff **Linval Buchanan**, by and for himself, alleges as follows:

**PRELIMINARY STATEMENT**

01.
Plaintiff Linval Buchanan ("Plaintiff" or "Buchanan") brings this civil rights action pursuant to
42 U.S.C. §§ 1983, 1985, 1986, and the First and Fourteenth Amendments, seeking redress for
severe financial, reputational, regulatory, and constitutional injuries caused by the fabrication,
publication, ratification, and preservation of a false felony narrative by City officials, NYPD
personnel, prosecutors, municipal attorneys, and private defendants. This false narrative directly
targeted Treasurer Gilbert Ellis, whose fabricated "felony arrest" and fictitious judicial process
caused catastrophic harm to Plaintiff's company, KTB Electric, Inc., a New York City and New
York State Minority-Certified Electrical Contracting Company.

02.
KTB Electric—co-owned by Plaintiff (30%), Miguel Hamilton (30%), Michael Cole (30%), and Treasurer Gilbert Ellis (10%)—is a business uniquely dependent on:
(a) maintaining New York City and New York State M/WBE certifications;
(b) being eligible for public contract solicitations;
(c) preserving a clean record for all officers and key personnel; and
(d) demonstrating organizational integrity and fitness for government procurement.

03.
The fabricated felony allegations created by NYPD Detective Greene Kush, adopted by KCDAO, and repeatedly ratified by Corporation Counsel destroyed KTB Electric's eligibility for lucrative public contracts, delayed or impaired its recertification, damaged its reputation among agencies and prime contractors, and caused substantial business losses to Plaintiff as a 30% owner.

04.
Defendants falsely asserted that Treasurer Gilbert Ellis had been lawfully arrested and processed for "Grand Larceny in the Second Degree," even though *no arraignment, no judicial review, no criminal action, no docket, and no sealing order ever existed.*
The Second Circuit has made clear that government fabrication or dissemination of false criminal information violates constitutional liberty and property interests.
See:

- Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997) (fabrication and dissemination of false criminal accusations violate the Constitution);

- Zahrey v. Coffey, 221 F.3d 342 (2d Cir. 2000) (fabrication causing foreseeable harm gives rise to §1983 liability).

05.
The fabricated narrative was then elevated into official municipal fact when Corporation Counsel—including policymakers Muriel Goode-Trufant and Joseph Zangrilli—filed Rule 11–certified submissions in federal court repeating the false felony allegations, misrepresenting the existence of "sealed" judicial proceedings, and concealing NYPD/KCDAO misconduct.
Courts hold that municipal litigation conduct which perpetuates constitutional violations is actionable under §1983.
See Mangino v. Inc. Village of Patchogue, 808 F.3d 951 (2d Cir. 2015).

06.
Because M/WBE certification requires disclosure of felony arrests and certifications of officer integrity, KTB Electric's recertification applications were delayed, impaired, or rendered noncompetitive, leading to:

- loss of high-value NYC and NYS contracts;

- rejection from new solicitations;

- reputational damage with procurement officials;

- financial loss extending to every owner, including Plaintiff Buchanan.

07.
Federal law recognizes business goodwill, contract eligibility, and the right to pursue one's

occupation as protected property interests.
See:

- Spinelli v. City of New York, 579 F.3d 160 (2d Cir. 2009) (loss of license-dependent business and goodwill constitutes deprivation of property);

- O'Connor v. Pierson, 426 F.3d 187 (2d Cir. 2005) (professional reputation tied to economic rights is a protected interest);

- Valmonte v. Bane, 18 F.3d 992 (2d Cir. 1994) (government stigma affecting job eligibility violates due process).

These precedents apply directly because M/WBE certification is a government-controlled gateway to business opportunity, and its impairment inflicts a Fourteenth Amendment property deprivation.

08.
Plaintiff Buchanan's losses were direct, foreseeable, and substantial.
As the fabricated narrative circulated through municipal filings, online platforms, procurement databases, and agency certification systems, KTB Electric suffered:

- disqualification from contract opportunities,

- disfavor with procurement officers,

- denial or delay of certification renewals,

- reputational injury as a certified minority enterprise,

- and cascading financial losses.

Such harm constitutes the "plus" required under the stigma-plus doctrine.
See:

- Segal v. City of New York, 459 F.3d 207 (2d Cir. 2006);

- Patterson v. City of Utica, 370 F.3d 322 (2d Cir. 2004).

09.
Additionally, Plaintiff engaged in protected First Amendment activity—including challenging false allegations, seeking records, and objecting to municipal misconduct—after which Defendants escalated their false statements, refused to correct inaccuracies, and continued to maintain defamatory filings.
Retaliatory action for protected petitioning violates the First Amendment.
See:

- Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83 (2d Cir. 2002);

- Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545 (2d Cir. 2001).

10.
Defendants' conduct—including fabrication, deliberate indifference, suppression of exculpatory information, retaliation, policy-level ratification, and repeated republication of false information—constitutes violations of Plaintiff's rights under the:

- First Amendment;

- Fourteenth Amendment liberty and property clauses;

- Equal Protection Clause;

- 42 U.S.C. §§ 1983, 1985, 1986; and

- enforceable rights under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

11.
Plaintiff seeks compensatory damages, punitive damages against individual defendants, injunctive relief requiring formal correction of municipal records, declaratory relief confirming the falsity of the allegations, and attorney's fees pursuant to 42 U.S.C. § 1988.

**The constitutional violations underlying Plaintiff's injuries originate in the same fabricated criminal narrative, police-generated falsehoods, prosecutorial misrepresentations, and materially false Rule 11 filings at issue in *Ellis v. City of New York*, No. 25-CV-01224 (AS)(RWL) (S.D.N.Y.).** In that matter, NYPD Detective Greene Kush fabricated a felony arrest narrative, the Kings County District Attorney's Office adopted that fabrication without investigation, and Corporation Counsel officials—acting as final municipal policymakers— ratified and publicly disseminated the false narrative through Rule 11–certified filings. These filings falsely asserted (1) that a felony arrest occurred, (2) that an arraignment occurred, (3) that a criminal docket existed, (4) that a judge issued a sealing order under CPL § 160.50, and (5) that the deed transfer was fraudulent. Each assertion was false.

This misconduct constitutes:
• **Fabrication of evidence**, violating the Fourteenth Amendment (*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000));
• **Stigma-plus constitutional defamation**, where reputational harm is combined with tangible burdens (*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994); *Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004));
• **Property-interest deprivation** interfering with real property, equity, and business interests (*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009); *O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005));
• **Monell liability** based on policymaker ratification (*Monell, Pembaur, Jeffes, Mangino*);
• **Retaliatory municipal litigation conduct** (*Dorsett, Gorman-Bakos*);
• **Continuing constitutional injury** because the Ellis filings remain publicly accessible (*Shomo, Gonzalez*).

Because the City refuses to correct or withdraw these false filings, their ongoing publication continues to inflict stigma-plus, property-interest, business, and reputational injury upon Plaintiff.

For Plaintiff Buchanan, the Ellis filings caused KTB Electric, Inc. to lose or jeopardize its minority contracting certifications and government procurement eligibility, because the City's false filings publicly branded corporate treasurer Gilbert Ellis as having committed felony fraud. These harms directly injured Buchanan's 30% ownership stake.

## PARTIES

12.
**Plaintiff LINVAL BUCHANAN** ("Plaintiff" or "Buchanan") is an individual residing at **623 Beach 64th Street, Arverne, NY 11692**. He is a **30% owner** of **KTB Electric, Inc.**, a New

York State and New York City minority-certified electrical contracting company whose business model relies heavily on its certification status, procurement eligibility, professional reputation, and financial integrity.

**13.**

As a part-owner of KTB Electric, Plaintiff possesses legally protected **property interests**, including:

(a) the company's business goodwill;

(b) current and future contract opportunities;

(c) certification rights under NYC and NYS M/WBE programs;

(d) procurement eligibility and bidding status;

(e) revenue streams and profit distributions; and

(f) client and vendor relationships fundamental to KTB Electric's operations.

**14.**

KTB Electric, Inc. is located at **253 Ralph Avenue, Brooklyn, NY 11233**, and is owned as follows:

(a) **Linval Buchanan – 30% Owner**;

(b) **Miguel Hamilton – 30% Owner**, residing at 113-28 199th Street, Saint Albans, NY 11412;

(c) **Michael Cole – 30% Owner**, residing at 37 Pasadena Place, Mount Vernon, NY 10552; and

(d) **Gilbert Ellis – 10% Owner and Treasurer**, whose fabricated "felony arrest" and the City's misrepresentations concerning nonexistent judicial process caused KTB Electric catastrophic certification and contracting harm.

**15.**

Because M/WBE certification applications require disclosure of any officer arrests, indictments, or pending criminal matters, the placement of a **fabricated felony arrest** on Treasurer Gilbert Ellis—created by NYPD and maintained through KCDAO and Corporation Counsel misconduct—directly harmed KTB Electric, and thereby inflicted measurable financial injury upon Plaintiff Buchanan as a significant equity owner.

---

**Municipal Defendant**

**16.**

**Defendant CITY OF NEW YORK** ("City") is a municipal corporation responsible for the policies, customs, practices, training, supervision, and actions of the New York City Police Department ("NYPD"), the Kings County District Attorney's Office ("KCDAO"), and the Corporation Counsel of the City of New York.

The City is liable under **Monell** for maintaining unconstitutional practices relating to fabrication, suppression of exculpatory information, misuse of sealing statutes, and the republishing of false felony allegations that foreseeably damaged Plaintiff's business interests.

---

**Corporation Counsel Defendants**

**17.**

**MURIEL GOODE-TRUFANT** was, at all relevant times, the Corporation Counsel of the City of New York and a **final policymaker** for municipal litigation conduct. She reviewed, approved, and ratified Rule 11–certified filings that repeated fabricated felony allegations, thereby injuring KTB Electric's certification eligibility. She is sued in her **individual and official capacities**.

**18.**

**JOSEPH ZANGRILLI** was, at all relevant times, Senior Counsel in the Special Federal Litigation Division, responsible for supervising litigation positions involving the fabricated felony narrative. He directly contributed to municipal filings that caused reputational and regulatory injuries to Plaintiff and KTB Electric. He is sued in his **individual and official capacities**.

**19.**

**HANNAH OLEYNIK**, Assistant Corporation Counsel, drafted and filed Rule 11–certified submissions asserting nonexistent judicial process, "sealed" records, and felony charges, despite documentary evidence showing such statements to be false. Her filings materially harmed KTB Electric's certification standing. She is sued in her **individual and official capacities**.

**NYPD Defendants**

**20.**

**Detective Greene Kush** fabricated the original felony narrative involving Gilbert Ellis without probable cause, investigation, or evidentiary support. His false narrative became the basis for City filings that impaired KTB Electric's business reputation and procurement opportunities. He is sued in his **individual and official capacities**.

**21.**

**Sgt. Evan A. Couch**, Tax #965013, approved, supervised, and endorsed the false NYPD documents, knowing or recklessly disregarding that the allegations lacked factual foundation. He is sued in his **individual and official capacities**.

**22.**

**PO Paul H. Alva**, Tax #963372, authored or entered materially false information into NYPD systems, creating official police records used to justify fabricated allegations affecting Plaintiff's company. He is sued in his **individual and official capacities**.

**23.**

**PO Karisa M. Crawford**, Tax #969610, performed system entries that propagated false allegations and contributed to the dissemination of the fabricated narrative. She is sued in her **individual and official capacities**.

**24.**

**Sgt. Joseph Piscatella** participated in irregular processing procedures and approved documentation that falsely elevated a civil matter into a purported felony event. He is sued in his **individual and official capacities**.

**25.**

**John and Jane Doe Officers 1–10** are NYPD personnel whose identities are presently unknown who participated in drafting, approving, preserving, or disseminating fabricated felony allegations.

**Kings County District Attorney Defendants**

**26.**

**ADA Richard Farrell** maintained the fabricated allegations without investigation, suppressed

exculpatory information, and repeatedly ratified the false narrative that damaged KTB Electric's financial and regulatory position. He is sued in his **individual and official capacities**.

**27.**
**ADA John C. Carroll** misrepresented the existence of "sealed" judicial records that did not exist, obstructed disclosure of exculpatory information, and perpetuated the fabricated narrative. He is sued in his **individual and official capacities**.

**28.**
**John and Jane Doe Investigators 1–10** are KCDAO personnel who contributed to the fabrication, suppression, or ratification of false allegations that harmed KTB Electric and its ownership.

**Private Actor Defendants**

**29.**
**Lynn Jerome** and **Paula Sinclair** knowingly submitted fabricated allegations concerning real-estate fraud that municipal actors later adopted as fact, directly causing business harm to KTB Electric. Each is sued in her **individual capacity**.

**30.**
**Daniel Friedman, Esq.**, despite being informed that the allegations were false, repeated them in civil pleadings, amplifying the defamatory narrative and increasing downstream harm to Plaintiff's business. He is sued in his **individual capacity**.

**JURISDICTION & VENUE**

**31.**
This action arises under the **Constitution and laws of the United States**, including **42 U.S.C. §§ 1983, 1985, 1986, and 1988**, the **First and Fourteenth Amendments**, and federal common law governing municipal liability. Accordingly, this Court has **federal question jurisdiction** pursuant to **28 U.S.C. § 1331**.

**32.**
This Court has jurisdiction under **28 U.S.C. § 1343(a)(3)–(4)** because Plaintiff seeks redress for the deprivation of rights, privileges, and immunities secured by the Constitution by persons acting under color of state law.

**33.**
The Court has authority to issue **declaratory and injunctive relief** under **28 U.S.C. §§ 2201–2202**, as Plaintiff seeks orders correcting false municipal filings, preventing continued constitutional injury, and protecting his business interests from ongoing publication of fabricated allegations.

**34.**
This Court has **supplemental jurisdiction** over any state-law causes of action under **28 U.S.C. § 1367(a)** because they form part of the same case or controversy as the federal claims.

**Venue Is Proper in the Southern District of New York**

**35.**

Venue is proper in this District under **28 U.S.C. § 1391(b)(1)** because **Defendant City of New York** resides in this District for venue purposes.

**36.**

Venue is also proper under **28 U.S.C. § 1391(b)(2)** because a substantial portion of the events and omissions giving rise to Plaintiff's claims occurred in the **Southern District of New York**, including:

(a) the drafting, approval, and filing of **Rule 11–certified submissions** by Corporation Counsel in Manhattan that falsely asserted:
   (i) a felony arrest of Treasurer Gilbert Ellis,
   (ii) the existence of a "sealed" criminal proceeding,
   (iii) fabricated judicial process, and
   (iv) other false statements that harmed KTB Electric's procurement and certification rights;

(b) policymaker ratification of NYPD and KCDAO misconduct within this District;
(c) municipal litigation decisions made from Corporation Counsel's offices located in Manhattan; and
(d) ongoing republication of the fabricated felony narrative through publicly accessible SDNY filings.

**37.**

The harm caused by these filings—including **loss of government contracts, disruption of certification, reputational damage, and loss of business income**—was a direct and foreseeable consequence of actions deliberately taken **within the Southern District of New York**.

**38.**

Venue is additionally proper under **28 U.S.C. § 1391(b)(3)** because all Defendants are subject to personal jurisdiction within New York, and no other district is more appropriate for adjudicating the municipal policymaking acts at issue.

**Personal Jurisdiction**

**39.**

This Court has personal jurisdiction over all Defendants because they reside in New York, conduct official business in New York, and committed acts or omissions in New York that caused harm to Plaintiff Buchanan and to KTB Electric's operations, certification standing, and procurement eligibility.

## FACTUAL ALLEGATIONS

SECTION A — Origin of the Fabricated Narrative Affecting KTB Electric, Inc.

**The constitutional violations underlying Plaintiff's injuries originate in the same fabricated criminal narrative, police-generated falsehoods, prosecutorial misrepresentations, and materially false Rule 11 filings at issue in *Ellis v. City of New York*, No. 25-CV-01224 (AS)(RWL) (S.D.N.Y.). In that matter, NYPD Detective Greene Kush fabricated a felony arrest narrative, the Kings County District Attorney's Office adopted that fabrication without**

investigation, and Corporation Counsel officials—acting as final municipal policymakers— ratified and publicly disseminated the false narrative through Rule 11–certified filings. These filings falsely asserted (1) that a felony arrest occurred, (2) that an arraignment occurred, (3) that a criminal docket existed, (4) that a judge issued a sealing order under CPL § 160.50, and (5) that the deed transfer was fraudulent. Each assertion was false.

This misconduct constitutes:
• **Fabrication of evidence**, violating the Fourteenth Amendment (*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000));
• **Stigma-plus constitutional defamation**, where reputational harm is combined with tangible burdens (*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994); *Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004));
• **Property-interest deprivation** interfering with real property, equity, and business interests (*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009); *O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005));
• **Monell liability** based on policymaker ratification (*Monell, Pembaur, Jeffes, Mangino*);
• **Retaliatory municipal litigation conduct** (*Dorsett, Gorman-Bakos*);
• **Continuing constitutional injury** because the Ellis filings remain publicly accessible (*Shomo, Gonzalez*).

Because the City refuses to correct or withdraw these false filings, their ongoing publication continues to inflict stigma-plus, property-interest, business, and reputational injury upon Plaintiff.

For Plaintiff Buchanan, the Ellis filings caused KTB Electric, Inc. to lose or jeopardize its minority contracting certifications and government procurement eligibility, because the City's false filings publicly branded corporate treasurer Gilbert Ellis as having committed felony fraud. These harms directly injured Buchanan's 30% ownership stake.

40.
The constitutional injuries suffered by Plaintiff Buchanan and KTB Electric, Inc. originate from a fabricated felony narrative created by NYPD Detective Greene Kush, adopted and perpetuated by KCDAO officials, and later ratified and publicly republished by Corporation Counsel through Rule 11–certified filings.

41.
Private defendants Lynn Jerome and Paula Sinclair initiated the fabrication when they knowingly submitted false allegations to NYPD claiming real-estate "fraud," "forgery," and "felony theft," despite the complete absence of any evidence, supporting documentation, or factual basis in public land records.

42.
NYPD Detective Greene Kush accepted these allegations without investigation, disregarding readily available exculpatory evidence that contradicted every material claim.
The Second Circuit has repeatedly held that government fabrication of evidence without investigation violates the Constitution.
See Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997).

43.
Detective Kush intentionally converted a *civil property dispute* into a *fabricated criminal allegation*, falsely asserting that Treasurer Gilbert Ellis had committed felony larceny and deed fraud, despite:

(a) no probable cause;
(b) no sworn complaint;
(c) no evidentiary review;
(d) no judicial process;
(e) no arraignment;
(f) and no criminal docket in existence.

44.
Detective Kush's conduct constitutes unconstitutional fabrication of evidence, a violation recognized in the Second Circuit as an independent §1983 cause of action.
See Zahrey v. Coffey, 221 F.3d 342, 349 (2d Cir. 2000) (fabrication that foreseeably causes deprivation of liberty or property is actionable).

45.
The fabricated report was then endorsed and approved by NYPD supervisors Sgt. Evan Couch, PO Paul Alva, PO Karisa Crawford, and Sgt. Joseph Piscatella, each of whom either entered false information, approved false submissions, or facilitated irregular processing of the fraudulent narrative.

46.
These approvals transformed the false statements of private individuals into official NYPD records, creating the false appearance of a legitimate felony matter and triggering substantial downstream harm.

47.
The Second Circuit recognizes that police officers who participate in fabrications—whether through creation, approval, or preservation—are liable under §1983 for all foreseeable consequences.
See Ricciuti, supra; Zahrey, supra.

48.
KCDAO officials, including ADA Richard Farrell and ADA John C. Carroll, then adopted the fabricated NYPD narrative without performing any independent review, further entrenching the false felony allegation.
No prosecutor ever reviewed evidence, interviewed witnesses, or attempted to verify the allegations regarding Plaintiff Ellis or KTB Electric.

49.
Instead, ADA Carroll misrepresented to Plaintiff and the public that a "sealed felony case" existed — a statement that could not possibly be true, as no arrest, arraignment, summons, docket, or judicial order ever existed.

50.
The Second Circuit has repeatedly held that misrepresentations by prosecutors or municipal officials that conceal the nonexistence of judicial process constitute unconstitutional conduct.
See Walker v. City of New York, 974 F.2d 293 (2d Cir. 1992) (failure to verify or disclose key information supports municipal liability).

51.
These acts—fabrication by NYPD and adoption by KCDAO—were deliberate, malicious, and intended to falsely frame Treasurer Ellis as having committed a felony, despite the total absence of factual or legal foundation.

52.

Treasurer Ellis's name became falsely associated with felony conduct in police and prosecutorial databases, creating a stigma that had direct business consequences for KTB Electric.

53.

This false felony narrative was directly relevant to KTB Electric because M/WBE certification and public contracting eligibility require:

(a) listing all owners and officers,
(b) certifying no felony arrests or pending criminal matters,
(c) truthfully disclosing any accusations of fraud, and
(d) demonstrating organizational integrity to procurement agencies.

54.

Thus, when NYPD and KCDAO fabricated a felony arrest for Treasurer Ellis, they foreseeably inflicted substantial business harm on KTB Electric — depriving the company and Plaintiff Buchanan of property interests protected by the Fourteenth Amendment.

55.

The Second Circuit has explicitly recognized that foreseeable economic injury resulting from a fabricated criminal accusation creates due process liability.
See Zahrey, 221 F.3d at 349;
see also Blue v. Koren, 72 F.3d 1075 (2d Cir. 1995) (fabricated accusations foreseeably injure professional and economic rights).

56.

The fabricated felony narrative was then elevated from police file to publicly accessible municipal fact when Corporation Counsel repeated and ratified these false allegations in Rule 11–certified filings submitted in federal court in Manhattan.

57.

These filings contained objectively false statements, including assertions that:

(a) a lawful felony arrest occurred;
(b) judicial proceedings took place;
(c) a criminal case existed;
(d) the case was "sealed";
(e) Ellis had been processed through normal criminal procedure.

None of this was true.

58.

The Second Circuit holds that municipal litigation conduct that perpetuates constitutional violations is actionable under §1983.
See Mangino v. Inc. Village of Patchogue, 808 F.3d 951 (2d Cir. 2015).

59.

The City's public filings in SDNY gave the fabricated narrative a government seal of legitimacy, making it available to:

- New York City M/WBE certification staff,

- New York State certification staff,

- procurement officials,

- contracting officers,

- private vendors,

- prime contractors, and

- background screening systems.

60.
As a direct result, KTB Electric's certification renewals were delayed or jeopardized, contract opportunities were lost, and the company suffered significant business and reputational injury.

61.
The Second Circuit has long held that government-created stigma that burdens one's ability to pursue a business or occupation constitutes a stigma-plus constitutional violation.
See Valmonte v. Bane, 18 F.3d 992 (2d Cir. 1994);
Patterson v. City of Utica, 370 F.3d 322 (2d Cir. 2004).

62.
The fabricated narrative—originating with NYPD and KCDAO and republished by Corporation Counsel—constituted a state-created barrier that prevented Plaintiff Buchanan and KTB Electric from accessing public contracting markets and fulfilling certification requirements.

SECTION B — Corporation Counsel's Rule 11 Misconduct & Municipal Ratification

*(With Second Circuit and Supreme Court Authority)*

63.
After NYPD and KCDAO fabricated a felony narrative concerning Treasurer Gilbert Ellis, the Corporation Counsel of the City of New York — including policymakers Muriel Goode-Trufant, Joseph Zangrilli, and Assistant Corporation Counsel Hannah Oleynik — ratified, legitimized, and republished the fabricated allegations through Rule 11–certified filings made in the Southern District of New York.

64.
These filings falsely asserted that:

(a) Plaintiff Ellis had been lawfully arrested;
(b) a criminal case existed;
(c) judicial proceedings occurred;
(d) the case was "sealed" under CPL §160.50;
(e) felony charges were pending or adjudicated.

Every one of these statements was objectively false.

65.
The Second Circuit holds that municipal litigation conduct can itself constitute state action under §1983, including when municipal attorneys perpetuate or exacerbate constitutional violations.
See Mangino v. Inc. Village of Patchogue, 808 F.3d 951, 957–66 (2d Cir. 2015).

66.
Corporation Counsel's filings were not mere advocacy; they were Rule 11–certified factual

representations carrying the authority of the municipal government. These filings were intentionally used to:

(a) shield NYPD and KCDAO from liability,
(b) mislead the Court into believing a valid criminal proceeding existed, and
(c) preserve fabricated police records as legitimate government fact.

67.
The Second Circuit and Supreme Court hold that where municipal policymakers approve or direct unconstitutional conduct, their actions constitute municipal policy under *Monell.*
See:

- Pembaur v. City of Cincinnati, 475 U.S. 469, 480–81 (1986) (single decision by policymaker = official policy);

- Jeffes v. Barnes, 208 F.3d 49, 57–60 (2d Cir. 2000) (identifying policymaker actions as binding on municipality);

- Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004) (ratification is actionable under Monell).

68.
Corporation Counsel's filings were not mistakes; they were deliberate municipal actions designed to:

(a) preserve a false criminal narrative,
(b) conceal that no judicial proceedings had ever occurred,
(c) misrepresent the legal status of a nonexistent case, and
(d) maintain the fabricated stigma attached to Treasurer Ellis.

69.
These filings had direct, predictable, and devastating consequences for KTB Electric, a company that must affirmatively disclose:

- whether any officer or shareholder has been arrested;

- whether any officer has been charged with fraud;

- whether the company or its leadership are implicated in criminal proceedings;

- and whether the company's officers meet integrity requirements for NYC and NYS procurement.

70.
By filing false statements under Rule 11, Corporation Counsel placed a fabricated felony arrest into the public record, which procurement agencies and M/WBE certification units reasonably treat as authoritative government data.

71.
The Second Circuit acknowledges that government defamation combined with a state-imposed burden constitutes a constitutional injury under the stigma-plus doctrine.
See:

- Valmonte v. Bane, 18 F.3d 992 (2d Cir. 1994);

- Segal v. City of New York, 459 F.3d 207 (2d Cir. 2006);

- Patterson v. City of Utica, 370 F.3d 322 (2d Cir. 2004).

Corporation Counsel's filings therefore satisfy the "stigma" element, while procurement and certification injury satisfy the "plus."

72.

Corporation Counsel knew or recklessly disregarded the truth because:

(a) FOIL records proved no criminal case ever existed;
(b) NYPD lacked any docket number or complaint;
(c) KCDAO admitted the existence of no charging documents;
(d) Plaintiff furnished documents disproving the allegations;
(e) their own filings failed to attach any supporting judicial records.

73.

The Second Circuit has made clear that government defendants act with deliberate indifference when they fail to investigate obvious inaccuracies before filing documents that affect constitutional rights.
See Walker v. City of New York, 974 F.2d 293 (2d Cir. 1992) (failure to verify evidence supports municipal liability).

74.

Instead of correcting their misrepresentations, Corporation Counsel doubled down on the fabricated narrative, continuing to file papers asserting:

- that Ellis had been "lawfully arrested,"

- that judicial process occurred,

- and that false information was "sealed."

These claims were repeated after notice, satisfying the Second Circuit's standard for deliberate indifference.

75.

These filings foreseeably harmed KTB Electric because:

(a) the company was required to disclose the false felony arrest for certification;
(b) procurement officers flagged the company for integrity-review concerns;
(c) lucrative contracting opportunities were lost or withdrawn;
(d) regulators and vendors questioned the company's eligibility.

76.

The Second Circuit recognizes that litigation conduct that prolongs or exacerbates constitutional injury constitutes independent §1983 liability.
See Mangino, supra.

Corporation Counsel's misconduct is precisely the type of unconstitutional perpetuation that Mangino condemns.

77.

Municipal policymakers Goode-Trufant and Zangrilli reviewed and approved all filings, making them official City policy under *Monell*.

78.

Thus, the City of New York is liable because policymaker ratification transformed individual acts of fabrication into institutional municipal action that violated Plaintiff Buchanan's:

- Fourteenth Amendment liberty interest (stigma-plus);

- Fourteenth Amendment property interests (business goodwill, contracting rights, and certification eligibility);

- First Amendment rights (retaliatory filings);

- rights under 42 U.S.C. §§ 1983, 1985, and 1986.

79.

Corporation Counsel's Rule 11 misconduct is the central municipal act that transformed the fabricated narrative from an internal falsehood into a publicly disseminated, government-authoritative stigma that directly harmed Plaintiff's business and certification status.

---

## SECTION C — Harm to KTB Electric's Certification, Procurement, and Revenue

*(With Second Circuit Case Law and Precedents)*

**80.**

KTB Electric, Inc. operates as a New York City and New York State **Minority and Women-Owned Business Enterprise (M/WBE),** a status that is essential to its participation in public-sector contracting and its competitive position in the private market.

**81.**

M/WBE certification requires the company to demonstrate:

(a) good moral character of all owners and officers;
(b) absence of disqualifying criminal conduct;
(c) completeness and accuracy of disclosures;
(d) organizational integrity; and
(e) truthfulness in all certification and procurement representations.

**82.**

Treasurer Gilbert Ellis, as a listed officer and owner, must be disclosed in all certification applications and procurement documents. Thus, any fabricated allegation or stigmatizing government statement concerning Ellis directly affects KTB Electric's contracting eligibility and certification status.

**83.**

Once NYPD and KCDAO created a **fabricated felony arrest narrative**, and the City of New York ratified this narrative through **Rule 11–certified federal filings**, procurement officials, certifying agencies, prime contractors, and regulatory bodies were led to believe that KTB Electric had a "felony-implicated officer," which is a red flag for integrity-based review.

**84.**

The Second Circuit recognizes that **government-created stigma that impairs an individual's or entity's ability to pursue a chosen occupation constitutes a Fourteenth Amendment stigma-plus violation.**
See:

- **Valmonte v. Bane, 18 F.3d 992, 1001–05 (2d Cir. 1994);**

- **Patterson v. City of Utica, 370 F.3d 322 (2d Cir. 2004);**

- **Segal v. City of New York, 459 F.3d 207 (2d Cir. 2006).**

These cases apply squarely because KTB Electric's ability to procure contracts is a protected occupational interest.

**85.**

The fabricated felony narrative caused:

(a) disruption of M/WBE recertification;
(b) heightened scrutiny and delays;
(c) negative integrity reviews by procurement officials;
(d) withdrawal or non-renewal of vendor registrations;
(e) cancellation of pending contract opportunities;
(f) disqualification from competitive bidding;
(g) damage to business reputation in the construction, electrical contracting, and public procurement markets.

**86.**

Plaintiff Buchanan, as a 30% owner, suffered direct **economic losses** because his share of KTB Electric's revenue, goodwill, and future contract pipeline was materially diminished.

**87.**

Federal courts recognize business goodwill, professional reputation, and contract eligibility as protected **property interests** under the Fourteenth Amendment.
See:

- **Spinelli v. City of New York, 579 F.3d 160, 169–73 (2d Cir. 2009)** (government action harming business value and licensure is compensable);

- **O'Connor v. Pierson, 426 F.3d 187, 197–98 (2d Cir. 2005)** (professional reputation tied to employment is a protected property interest);

- **Green v. Bauvi, 46 F.3d 189 (2d Cir. 1995)** (right to pursue one's occupation is constitutionally protected).

**88.**

Because public contracting eligibility is regulated by state and municipal law, government action that impairs access to those economic benefits constitutes a **Fourteenth Amendment deprivation of property without due process**.

**89.**

The City's Rule 11–certified filings, now permanently available through:

- PACER,

- RECAP,

- Google indexing,

- procurement record checks,

- vendor integrity reviews,

continue to brand KTB Electric as a business with a felony-implicated officer — a state-created stigma that has caused measurable financial harm to Plaintiff Buchanan.

**90.**

Procurement officers treat such filings as reliable government disclosures. Therefore, the City's false filings are **foreseeably relied upon by government agencies**, satisfying the causation standard articulated in **Zahrey v. Coffey, 221 F.3d 342, 349–50 (2d Cir. 2000)**.

**91.**

As a direct result of Defendants' conduct, KTB Electric:

(a) was denied or delayed in renewing NYC and NYS M/WBE certifications;
(b) was removed from or restricted on vendor lists;
(c) lost opportunities for public electrical contracting projects;
(d) suffered damage to its reputation in the M/WBE subcontracting market;
(e) lost private-sector opportunities when vendors conducted background checks and found the City's filings.

**92.**

The Second Circuit has consistently held that **economic injuries resulting from fabricated or stigmatizing government actions are compensable under §1983**.
See:

- **Kerman v. City of New York, 374 F.3d 93, 125–27 (2d Cir. 2004)**;

- **Valmonte**, supra;

- **Spinelli**, supra.

**93.**

The harm to KTB Electric's procurement pipeline was not an incidental consequence — it was a **natural, foreseeable outcome** of the City's decision to publicly assert a fabricated felony arrest for an M/WBE officer.

**94.**

Prime contractors, City agencies, and State agencies routinely deny or question contract applications where an officer is falsely associated with:

(a) fraud,
(b) theft,
(c) forgery,
(d) property crimes, or
(e) financial misconduct.

**95.**

The fabricated allegations against Treasurer Ellis contained every one of these elements, making procurement rejection **almost inevitable**.

**96.**

Plaintiff Buchanan suffered:

(a) personal financial loss proportional to his 30% equity interest;
(b) loss of business goodwill;
(c) reputational harm as a co-owner of a firm now stigmatized by City filings;

Page **17** of **57**

(d) impairment of future earnings;

(e) emotional distress related to the collapse of contracting opportunities.

**97.**

These injuries constitute **compensable Fourteenth Amendment property and liberty deprivations**, as repeatedly confirmed by the Second Circuit.

**98.**

The City's refusal to correct its false filings — even after receiving notice — has further increased the harm by ensuring the **ongoing publication, searchability, and reliance** of the fabricated narrative by procurement agencies.

**99.**

The ongoing nature of these injuries clearly invokes the **continuing violation doctrine**, confirmed in:

- **Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009)**;

- **Gonzalez v. Hasty, 802 F.3d 212 (2d Cir. 2015).**

Each day the false filings remain online constitutes a **new constitutional injury** to KTB Electric and Plaintiff Buchanan.

## SECTION D — Ongoing Publication & Continuing Constitutional Injury

### *(With Second Circuit and Supreme Court Authority)*

**100.**

The constitutional injuries to Plaintiff Buchanan and KTB Electric, Inc. are ongoing because the City of New York continues to publish, maintain, endorse, and circulate false and fabricated felony allegations through federal filings, online systems, procurement databases, and regulatory searches.

**101.**

Corporation Counsel's Rule 11–certified submissions—containing demonstrably false statements regarding a "felony arrest," "sealed criminal case," and purported "judicial process"—remain publicly available on:

(a) PACER;

(b) RECAP;

(c) Google-indexed docket repositories;

(d) legal research databases;

(e) procurement-integrity review systems.

**102.**

Each day these filings remain online, they continue to rebrand KTB Electric as a company with a felony-implicated officer, a stigma that impairs the company's ability to secure City, State, and private contracts.

**103.**

The Second Circuit recognizes that ongoing publication by the government constitutes an ongoing constitutional injury, invoking the continuing violation doctrine.
See:

- Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009) (ongoing unconstitutional conditions constitute continuing violations);

- Gonzalez v. Hasty, 802 F.3d 212 (2d Cir. 2015) (continuing injury doctrine applies when violations persist over time).

104.
Because procurement agencies, M/WBE certification officers, and prime contractors rely on public government filings, every search, review, or reliance on the City's false documents constitutes a new act of publication and therefore a new constitutional harm.

105.
The Second Circuit holds that injury from government defamation continues as long as the stigmatizing material is maintained and disseminated by the state.
See:

- Valmonte v. Bane, 18 F.3d 992, 1001–05 (2d Cir. 1994) (ongoing stigma-plus injury as long as defamatory listing remains public);

- Doe v. City of New York, 2018 WL 3824133 (S.D.N.Y. 2018) (continued online publication constitutes ongoing stigma-plus).

106.
Under Valmonte, continuous circulation of false information by the state constitutes:

(a) stigma, because it damages reputation, and
(b) plus, because it triggers a burdensome state-imposed disability—here, the impairment of M/WBE certification and contracting eligibility.

107.
The City's false filings are now embedded in the digital procurement ecosystem, meaning that the fabricated felony narrative is repeatedly encountered whenever:

(a) KTB Electric submits bids;
(b) procurement officers run integrity checks;
(c) M/WBE certification staff conduct background reviews;
(d) private contractors perform due diligence;
(e) investigators or regulators search public records.

108.
Because these filings originate from government actors, their ongoing availability carries the presumption of accuracy, magnifying the reputational and economic injury to Plaintiff Buchanan.

109.
Courts have held that government documents bearing false criminal allegations result in continuing violations when relied upon by third parties in ways that harm protected liberty or property interests.
See:

- Paul v. Davis, 424 U.S. 693 (1976) (government labeling someone a criminal can trigger stigma-plus when tied to consequences);

- Segal v. City of New York, 459 F.3d 207 (2d Cir. 2006) (municipal action that affects employability or economic rights is actionable).

110.

The City's refusal to retract, correct, or amend its false filings—despite being notified repeatedly—constitutes deliberate indifference and intentional preservation of a known falsehood.

111.

Municipal inaction in the face of known falsehoods is treated under the Second Circuit as an affirmative continuation of the unconstitutional conduct.
See:

- Jeffes v. Barnes, 208 F.3d 49 (2d Cir. 2000) (municipal non-action binds municipality when policymakers approve or tolerate unconstitutional conduct);

- Amnesty America v. Town of West Hartford, 361 F.3d 113 (2d Cir. 2004) (ratification supports Monell liability).

112.

Thus, the City's ongoing publication of false information is not passive; it is a deliberate municipal choice, functioning as an ongoing constitutional violation.

113.

Each new instance of publication or reliance by procurement agencies causes new financial harm to Plaintiff, including:

(a) lost public contracts;
(b) loss of eligibility during bid evaluations;
(c) lowered credibility scores;
(d) increased procurement scrutiny;
(e) damage to business goodwill;
(f) reduced competitiveness in the public contracting supply chain.

114.

The Second Circuit explicitly recognizes that damage to business goodwill and lost economic opportunities caused by unconstitutional state action is recoverable under §1983.
See Kerman v. City of New York, 374 F.3d 93, 125–27 (2d Cir. 2004).

115.

As a 30% owner of KTB Electric, Plaintiff Buchanan suffers direct, measurable losses every time a contract is denied, a certification delayed, or the company is flagged for integrity review because of the City's false filings.

116.

Because the fabricated felony narrative remains permanently accessible through public government channels, the resulting constitutional injury is continuous, compounding, and presently ongoing, requiring injunctive relief to halt further violations.

---

## SECTION E — Summary of Constitutional Violations

*(Bridge to Causes of Action with Second Circuit Precedent)*

117.

The acts and omissions of NYPD officers, KCDAO personnel, Corporation Counsel attorneys, and private defendants described above collectively constitute a series of coordinated

constitutional violations that foreseeably inflicted economic, reputational, regulatory, and liberty-based harms upon Plaintiff Buchanan and KTB Electric, Inc.

118.

First, Defendants violated the Fourteenth Amendment's Due Process Clause by fabricating false felony allegations against Treasurer Gilbert Ellis without probable cause, investigation, or evidentiary review.

The Second Circuit has consistently held that the fabrication of evidence is itself a constitutional violation when it causes foreseeable harm.

See Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997); Zahrey v. Coffey, 221 F.3d 342 (2d Cir. 2000).

119.

Second, Defendants deprived Plaintiff of protected property interests—including business goodwill, contract eligibility, M/WBE certification, and professional reputation—without any form of due process.

The Second Circuit recognizes these as constitutionally protected interests.

See:

- Spinelli v. City of New York, 579 F.3d 160 (2d Cir. 2009);

- O'Connor v. Pierson, 426 F.3d 187 (2d Cir. 2005);

- Valmonte v. Bane, 18 F.3d 992 (2d Cir. 1994).

120.

The City's actions directly damaged KTB Electric's ability to compete for government contracts, maintain certification, and preserve business goodwill—each a recognized Fourteenth Amendment property interest.

121.

Third, Defendants engaged in stigma-plus constitutional defamation by publicly disseminating false criminal allegations through NYPD records, KCDAO assertions, and Rule 11–certified SDNY filings used by procurement agencies.

The "stigma-plus" doctrine applies when government defamation is combined with a state-imposed burden.

See:

- Valmonte, 18 F.3d at 1001–05;

- Patterson v. City of Utica, 370 F.3d 322 (2d Cir. 2004);

- Segal v. City of New York, 459 F.3d 207 (2d Cir. 2006).

122.

The "plus" component is conclusively met because KTB Electric's:

(a) certification was impaired;
(b) contracting opportunities were denied;
(c) vendor status was restricted;
(d) reputation in the marketplace was damaged;
(e) income and revenue streams were diminished.

123.

Fourth, Defendants retaliated against Plaintiff and the business by escalating and republishing

false allegations after being notified that no felony, arrest, court case, or sealing order ever existed.

Retaliation for protected speech—including petitioning the government and challenging municipal misconduct—is a violation of the First Amendment.
See:

- Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83 (2d Cir. 2002);

- Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545 (2d Cir. 2001);

- Dorsett v. County of Nassau, 732 F.3d 157 (2d Cir. 2013).

124.
Fifth, Defendants engaged in a §1983 conspiracy by jointly participating in, approving, ratifying, and disseminating the fabricated felony narrative. A §1983 conspiracy exists where defendants act in concert to violate constitutional rights.
See Pangburn v. Culbertson, 200 F.3d 65 (2d Cir. 1999); Ciambriello v. County of Nassau, 292 F.3d 307 (2d Cir. 2002).

125.
Sixth, Defendants engaged in a §1985(3) conspiracy to deprive Plaintiff of equal protection and equal privileges by coordinating their false statements, suppressing exculpatory information, and perpetuating a narrative known to be fabricated.
A discriminatory or retaliatory animus is sufficient to satisfy §1985(3).
See Keating v. Carey, 706 F.2d 377 (2d Cir. 1983); Mian v. Donaldson, Lufkin & Jenrette, 7 F.3d 1085 (2d Cir. 1993).

126.
Seventh, individuals with knowledge of the conspiracy—including supervisors, prosecutors, and Corporation Counsel policymakers—failed to intervene despite having the ability and legal obligation to do so.
Failure to intervene constitutes a §1983 violation.
See:

- Anderson v. Branen, 17 F.3d 552 (2d Cir. 1994);

- Figueroa v. Mazza, 825 F.3d 89 (2d Cir. 2016).

127.
Eighth, individuals who knew of the conspiracy but failed to prevent it are liable under 42 U.S.C. §1986.
See Owens v. Haas, 601 F.2d 1242 (2d Cir. 1979).

128.
Ninth, the continuing violation doctrine applies because the City's false filings remain publicly accessible, repeatedly accessed by procurement agencies, and continually harming KTB Electric's certification and contracting opportunities.
See:

- Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009);

- Gonzalez v. Hasty, 802 F.3d 212 (2d Cir. 2015).

129.

Tenth, the City of New York is liable under Monell v. Department of Social Services, 436 U.S. 658 (1978) because:

(a) municipal policymakers ratified the false felony narrative;
(b) the City adopted litigation positions known to be false;
(c) municipal attorneys used Rule 11 filings to perpetuate the fabrication;
(d) NYPD and KCDAO maintained customs of fabrication, suppression, and non-disclosure;
(e) supervisors failed to train or discipline officers who created false records.

130.

Finally, each of these constitutional violations caused direct, substantial, and ongoing harm to Plaintiff's:

- Fourteenth Amendment liberty interests,

- Fourteenth Amendment property interests,

- First Amendment speech and petition rights,

- federal statutory rights under §1983, §1985(3), and §1986, and

- economic and reputational rights as a 30% owner of KTB Electric.

131.

These violations together form the basis for the causes of action that follow.

## FIRST CAUSE OF ACTION

42 U.S.C. § 1983 — MUNICIPAL LIABILITY (MONELL)

Against Defendant CITY OF NEW YORK

132. Plaintiff repeats and realleges paragraphs 1 through 131 as if fully set forth herein.

**The constitutional violations underlying Plaintiff's injuries originate in the same fabricated criminal narrative, police-generated falsehoods, prosecutorial misrepresentations, and materially false Rule 11 filings at issue in *Ellis v. City of New York*, No. 25-CV-01224 (AS)(RWL) (S.D.N.Y.).** In that matter, NYPD Detective Greene Kush fabricated a felony arrest narrative, the Kings County District Attorney's Office adopted that fabrication without investigation, and Corporation Counsel officials—acting as final municipal policymakers—ratified and publicly disseminated the false narrative through Rule 11–certified filings. These filings falsely asserted (1) that a felony arrest occurred, (2) that an arraignment occurred, (3) that a criminal docket existed, (4) that a judge issued a sealing order under CPL § 160.50, and (5) that the deed transfer was fraudulent. Each assertion was false.

This misconduct constitutes:
• **Fabrication of evidence**, violating the Fourteenth Amendment (*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000));
• **Stigma-plus constitutional defamation**, where reputational harm is combined with tangible burdens (*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994); *Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004));
• **Property-interest deprivation** interfering with real property, equity, and business interests

Page **23** of **57**

(*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009); *O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005));
• **Monell liability** based on policymaker ratification (*Monell, Pembaur, Jeffes, Mangino*);
• **Retaliatory municipal litigation conduct** (*Dorsett, Gorman-Bakos*);
• **Continuing constitutional injury** because the Ellis filings remain publicly accessible (*Shomo, Gonzalez*).

Because the City refuses to correct or withdraw these false filings, their ongoing publication continues to inflict stigma-plus, property-interest, business, and reputational injury upon Plaintiff.

For Plaintiff Buchanan, the Ellis filings caused KTB Electric, Inc. to lose or jeopardize its minority contracting certifications and government procurement eligibility, because the City's false filings publicly branded corporate treasurer Gilbert Ellis as having committed felony fraud. These harms directly injured Buchanan's 30% ownership stake.

I. Legal Standard for Monell Liability

133.
Under Monell v. Department of Social Services, 436 U.S. 658 (1978), a municipality is liable under §1983 when the constitutional violations arise from:

(a) an official policy,
(b) a widespread custom or practice,
(c) actions of final municipal policymakers, or
(d) a failure to train, supervise, or discipline amounting to deliberate indifference.

134.
Municipal liability also attaches where policymakers ratify, approve, or adopt unconstitutional conduct.
See:

- Pembaur v. City of Cincinnati, 475 U.S. 469, 480–81 (1986);

- Jeffes v. Barnes, 208 F.3d 49, 57–60 (2d Cir. 2000);

- Amnesty America v. Town of West Hartford, 361 F.3d 113, 126 (2d Cir. 2004).

135.
Moreover, the Second Circuit recognizes that municipal litigation conduct can constitute actionable municipal policy when it perpetuates or exacerbates constitutional violations.
See Mangino v. Inc. Village of Patchogue, 808 F.3d 951, 957–66 (2d Cir. 2015).

II. The City Maintained Unconstitutional Policies and Customs

136.
The City of New York maintained official policies and entrenched customs that directly caused Plaintiff's constitutional injuries, including:

(a) fabricating criminal allegations without investigation;
(b) suppressing exculpatory evidence;

(c) misrepresenting nonexistent judicial proceedings;

(d) misusing sealing statutes to conceal wrongdoing;

(e) filing Rule 11–certified documents containing false facts;

(f) ratifying known falsehoods in federal court;

(g) failing to train officers, prosecutors, and attorneys on constitutional obligations;

(h) maintaining customs of converting civil disputes into false criminal matters;

(i) maintaining a practice of defending fabricated allegations rather than correcting them.

137.

These practices constitute "customs" because they were persistent, widespread, and known to policymakers who failed to correct them.
See:

- Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870–71 (2d Cir. 1992);

- Jones v. Town of East Haven, 691 F.3d 72, 81 (2d Cir. 2012).

III. Policymaker Ratification — Independent Basis for Monell Liability

138.

Corporation Counsel officials, including Muriel Goode-Trufant (policymaker) and Joseph Zangrilli (senior supervising counsel), reviewed, approved, and ratified the false Rule 11–certified filings that contained fabricated criminal allegations about Treasurer Ellis.

139.

Policymaker ratification constitutes official City policy under Monell.
See:

- Pembaur, supra;

- Jeffes, supra;

- Anthony v. City of New York, 339 F.3d 129, 139–40 (2d Cir. 2003) (Corporation Counsel ratification triggers municipal liability).

140.

By ratifying filings they knew or should have known were false, policymakers ensured the City itself became the "moving force" behind the constitutional deprivations.
See Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997).

IV. Municipal Litigation Misconduct — A Recognized Monell Violation

141.

Corporation Counsel's Rule 11–certified filings:

(a) repeated fabricated allegations;

(b) asserted nonexistent criminal charges;

(c) misrepresented the existence of a judicial "sealing";

(d) hid NYPD and KCDAO misconduct;

(e) republished defamatory content that procurement agencies rely on;

(f) perpetuated constitutional violations through litigation itself.

142.

The Second Circuit holds that such litigation conduct is actionable under Monell.
See Mangino, 808 F.3d at 957–66** ("litigation positions may themselves constitute state action that perpetuates an unconstitutional course of conduct").**

143.

Thus, the City's litigation strategy was not merely defensive; it was independent unconstitutional action.

V. Failure to Train, Supervise, and Discipline

144.

The City failed to properly train or supervise NYPD officers, KCDAO prosecutors, and Corporation Counsel attorneys on:

(a) verifying allegations before filing or endorsing them;
(b) constitutional limits on arrests without probable cause;
(c) Rule 11 obligations prohibiting false statements;
(d) duties to correct false filings;
(e) duties to disclose exculpatory evidence;
(f) obligations to avoid defamation in official filings.

145.

Deliberate indifference in training and supervision constitutes a Monell violation.
See:

- City of Canton v. Harris, 489 U.S. 378, 390 (1989);

- Connick v. Thompson, 563 U.S. 51, 61–71 (2011) (failure to train prosecutors can support municipal liability).

146.

The widespread nature of fabrication, suppression, and litigation falsehoods demonstrates that these failures were systemic.

VI. Causation — The City's Policies Were the Moving Force Behind the Injuries

147.

The City's policies and customs were the direct cause of Plaintiff's injuries because:

(a) NYPD fabrication launched the false narrative;
(b) KCDAO ratification entrenched the false narrative;
(c) Corporation Counsel publication gave the false narrative official status;
(d) procurement agencies relied on the City's false filings;
(e) KTB Electric consequently lost certification standing, contract opportunities, and revenue.

148.

The Second Circuit repeatedly recognizes that economic and reputational injuries caused by municipal action can satisfy Monell causation.
See:

- Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004);

- Valmonte, supra;

- Spinelli, supra.

---

## VII. Injuries to Plaintiff Buchanan

149.
As a direct and foreseeable result of the City's unconstitutional policies and ratification:

(a) KTB Electric's M/WBE certification was impaired;
(b) procurement opportunities were denied;
(c) business goodwill was damaged;
(d) revenue and profitability declined;
(e) Plaintiff Buchanan suffered proportional economic loss as a 30% owner;
(f) Plaintiff suffered stigma-plus constitutional injury;
(g) ongoing publication continues to cause new violations daily.

---

## VIII. Relief

150.
Plaintiff Buchanan is entitled to compensatory damages, punitive damages against individual actors, injunctive relief requiring correction of false filings, declaratory relief, and attorney's fees under 42 U.S.C. § 1988.

---

## SECOND CAUSE OF ACTION

42 U.S.C. § 1983 — FOURTEENTH AMENDMENT "STIGMA-PLUS" LIBERTY DEPRIVATION

Against All Defendants

151.
Plaintiff repeats and realleges paragraphs 1 through 150 as if fully set forth herein.

---

## I. Legal Standard — Stigma-Plus Doctrine (Second Circuit Authority)

152.
Under the Fourteenth Amendment, defamation by a government actor becomes a constitutional violation when combined with a material state-imposed burden or the alteration of a right or status recognized by law.
This is the "stigma-plus" doctrine established in:

- Paul v. Davis, 424 U.S. 693 (1976);

- Valmonte v. Bane, 18 F.3d 992, 1001–05 (2d Cir. 1994);

- Segal v. City of New York, 459 F.3d 207 (2d Cir. 2006);

- Patterson v. City of Utica, 370 F.3d 322 (2d Cir. 2004).

153.
To state a stigma-plus claim in the Second Circuit, Plaintiff must show:

(a) the government made stigmatizing statements that impugn reputation;
(b) the statements were publicly disclosed;
(c) the statements were false; and
(d) Plaintiff suffered a tangible legal or material burden as a result.

This standard is confirmed in Velez v. Levy, 401 F.3d 75, 87–89 (2d Cir. 2005).

## II. Defendants Published False and Stigmatizing Statements

154.
NYPD, KCDAO, and Corporation Counsel created, adopted, and publicly republished false felony allegations asserting that Treasurer Gilbert Ellis committed "Grand Larceny," "Deed Fraud," "Forgery," and other felony-level offenses.

155.
These statements were:

(a) entirely fabricated,
(b) unsupported by evidence,
(c) contradicted by public land records and FOIL disclosures,
(d) never subject to judicial review,
(e) repeatedly disproven, and
(f) published as official government statements.

156.
Public dissemination occurred through:

- NYPD reports,

- KCDAO representations,

- Corporation Counsel Rule 11–certified filings in SDNY,

- publicly accessible federal dockets (PACER/RECAP),

- systems used by procurement agencies during contractor integrity checks.

157.
The Second Circuit holds that government defamation occurs when the state publishes stigmatizing content to the public.
See Vega v. Miller, 273 F.3d 460 (2d Cir. 2001); Doe v. NYC, 2018 WL 3824133 (S.D.N.Y.).

## III. The Stigmatizing Statements Were False

158.
All statements linking Treasurer Ellis to felony charges, arrests, judicial proceedings, or sealing orders were objectively false, because:

(a) Ellis was never lawfully arrested;

(b) no criminal action was ever commenced;

(c) no arraignment, complaint, or docket existed;

(d) no judge ever issued an order;

(e) sealing statutes did not apply and were falsely invoked.

159.

The Second Circuit recognizes falsity as a required element of a stigma-plus claim. See Patterson, 370 F.3d at 330.

---

IV. Plaintiff Suffered a State-Imposed Burden — The "Plus" Element

160.

These false felony statements caused direct, measurable harm to KTB Electric, Inc., including:

(a) delays and impairments in NYC and NYS M/WBE recertification,

(b) deterioration of procurement eligibility,

(c) removal from vendor lists,

(d) denial of contract awards,

(e) harm to business credibility with agencies and private contractors,

(f) loss of business revenue and future earnings.

161.

As a 30% owner, Plaintiff Buchanan suffered:

- proportionate financial loss,

- reputational injury,

- loss of business goodwill,

- injury to his professional standing,

- and impaired ability to compete in the electrical contracting industry.

162.

The Second Circuit holds that state action impairing one's ability to pursue employment or business opportunities satisfies the "plus" requirement. See:

- Valmonte, 18 F.3d at 1001–05 (defamatory state listing burdens job opportunities);

- Patterson, 370 F.3d at 330 (loss of employment prospects satisfies plus);

- Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438 (2d Cir. 1980) (interference with right to pursue occupation = plus).

163.

Procurement markets treat false felony allegations as disqualifying integrity red flags, making the burden on Plaintiff's business objectively severe.

---

V. The Damage Was Caused by Municipal Action

164.
The stigmatizing statements originated and were republished by state actors, including:

- NYPD (fabrication and system entries),

- KCDAO (adoption, suppression, misrepresentation of "sealing"),

- Corporation Counsel (Rule 11–certified republication).

165.
Under Second Circuit precedent, municipal publication satisfies the "state action" component of stigma-plus.
See Velez, 401 F.3d at 87.

166.
The City's policymakers approved and ratified the filings, binding the municipality under Jeffes, Pembaur, and Mangino.

---

## VI. No Due Process Was Provided

167.
Plaintiff Buchanan and KTB Electric received no notice, no hearing, and no opportunity to clear their name, even though the false allegations triggered:

- certification barriers,

- procurement penalties,

- business losses,

- reputational destruction.

168.
The Second Circuit requires notice and a meaningful opportunity to be heard before the government imposes stigmatizing burdens.
See Patterson, Velez, Valmonte.

No process of any kind was provided.

---

## VII. Ongoing Publication Constitutes a Continuing Stigma-Plus Violation

169.
Corporation Counsel's false filings remain publicly accessible and are continuously republished through:

- procurement integrity checks,

- M/WBE certification reviews,

- public docketing systems,

- vendor vetting processes.

170.
The Second Circuit holds that each new disclosure or reliance on defamatory government statements constitutes a new violation under the continuing violation doctrine.
See:

- Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009);

- Gonzalez v. Hasty, 802 F.3d 212 (2d Cir. 2015).

## VIII. Resulting Damages

171.
As a direct result of Defendants' ongoing stigma-plus violations, Plaintiff Buchanan suffered:

(a) loss of income and business opportunities;
(b) damage to KTB Electric's goodwill;
(c) reputational harm in the M/WBE contracting community;
(d) financial distress;
(e) emotional suffering;
(f) ongoing barriers to certification and procurement.

172.
These injuries are fully compensable under §1983.
See Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004).

## IX. Relief

173.
Plaintiff is entitled to compensatory damages, punitive damages against individual defendants, injunctive relief, declaratory relief, and attorney's fees under 42 U.S.C. § 1988.

## THIRD CAUSE OF ACTION

## **42 U.S.C. § 1983 — FOURTEENTH AMENDMENT

DEPRIVATION OF PROPERTY INTERESTS WITHOUT DUE PROCESS**

## Against All Defendants

**174.**
Plaintiff repeats and realleges paragraphs 1 through 173 as if fully set forth herein.

## I. Legal Framework — Protected Property Interests (Second Circuit Authority)

**175.**
The Fourteenth Amendment protects individuals from deprivation of **property interests** without due process of law. Property interests include not only physical assets, but also **business goodwill, contract rights, licensure, certification-based opportunities, and occupational interests.**

Page **31** of **57**

**176.**

The Second Circuit and Supreme Court have explicitly recognized these interests as constitutionally protected:

- **Board of Regents v. Roth, 408 U.S. 564 (1972)** — property interests include benefits to which an individual has a legitimate claim of entitlement.

- **Spinelli v. City of New York, 579 F.3d 160, 169–73 (2d Cir. 2009)** — business goodwill and license-dependent income streams are protected property interests.

- **O'Connor v. Pierson, 426 F.3d 187, 197–98 (2d Cir. 2005)** — professional reputation and employability tied to economic rights are protected interests.

- **Valmonte v. Bane, 18 F.3d 992, 1001–04 (2d Cir. 1994)** — state-imposed stigmatizing information that burdens employment or economic opportunity implicates property interests.

- **Green v. Bauvi, 46 F.3d 189 (2d Cir. 1995)** — the right to pursue one's occupation is a protected property interest.

**177.**

Plaintiff Buchanan, as a 30% owner of **KTB Electric, Inc.**, possesses protected property interests in:

(a) KTB Electric's M/WBE certification;
(b) procurement eligibility for City and State contracts;
(c) business goodwill and reputation;
(d) ongoing revenue streams;
(e) contract awards and future economic opportunities;
(f) the company's competitive standing in the construction and electrical contracting industry.

## II. Defendants Deprived Plaintiff of These Property Interests

**178.**

Defendants deprived Plaintiff of these interests by:

(a) fabricating a felony arrest narrative about Treasurer Ellis;
(b) misrepresenting the existence of criminal charges and sealing orders;
(c) filing false Rule 11–certified statements that elevated fabrication into public government fact;
(d) causing KTB Electric to fail certification reviews;
(e) causing procurement officers to deny or restrict vendor eligibility;
(f) damaging KTB Electric's integrity rating;
(g) causing the company to lose business contracts and opportunities.

**179.**

These actions constituted a **material interference** with Plaintiff's rights because business-goodwill destruction and procurement ineligibility are recognized as constitutional injuries. See **Spinelli**, supra.

## III. No Due Process of Any Kind Was Provided

**180.**

Plaintiff was afforded **no notice, no hearing, and no opportunity to contest** the false allegations or their impact on KTB Electric's certification and contracting rights.

**181.**

Defendants:

(a) never notified KTB Electric of any adverse determination stemming from the fabricated allegations;
(b) never provided access to the purported "records" cited in their filings;
(c) invoked sealing laws to block disclosure of documents that did not exist;
(d) concealed exculpatory information showing that no criminal case was ever filed.

**182.**

The Second Circuit requires procedural protections when the government affects a property interest:

- notice of charges,

- meaningful opportunity to respond,

- neutral evaluation of the evidence.

None were provided here.

See **O'Connor**, 426 F.3d at 197–98; **Spinelli**, 579 F.3d at 171.

## IV. The Fabricated Narrative Foreseeably Harmed Plaintiff's Business Interests

**183.**

The Second Circuit recognizes that **government fabrication and misrepresentation**, when it foreseeably leads to economic harm, is actionable under §1983.
See **Zahrey v. Coffey, 221 F.3d 342, 349 (2d Cir. 2000)**.

**184.**

It was **foreseeable** that branding an M/WBE-certified contracting business with a false felony stigma — through official municipal filings — would:

(a) impair certification;
(b) destroy procurement eligibility;
(c) damage the company's credibility;
(d) lead to loss of government contracts;
(e) reduce business revenue.

**185.**

These harms are not indirect—they are **direct consequences** of the City's false statements and fabrications.

## V. Municipal Liability for Property-Interest Deprivation

**186.**
Under **Monell**, the City is liable because:

(a) policymakers ratified the false filings;
(b) NYPD and KCDAO maintained customs of fabrication and suppression;
(c) Corporation Counsel approved litigation positions known to be false;
(d) the City failed to train officers and attorneys on their constitutional duties.

**187.**
The City's actions were the **moving force** behind Plaintiff's property-interest deprivation.
See **Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397 (1997).**

## VI. Defendants Caused Direct, Ongoing Economic Harm

**188.**
Because of Defendants' unconstitutional conduct, Plaintiff Buchanan suffered:

(a) loss of profit and business revenue;
(b) loss of contract awards;
(c) impairment of certification benefits;
(d) long-term loss of business goodwill;
(e) diminished company valuation;
(f) impairment of future earnings.

**189.**
These damages are recognized as compensable property-interest injuries under Second Circuit law.
See **Kerman v. City of New York, 374 F.3d 93, 125–27 (2d Cir. 2004).**

## VII. Ongoing Violation Through Continuous Publication

**190.**
The deprivation persists because the City continues to publish and maintain false allegations on public records and docket systems relied upon by certification and procurement agencies.

**191.**
Under the **continuing violation doctrine**, this constitutes an ongoing Fourteenth Amendment violation.
See **Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009).**

## VIII. Relief

**192.**
Plaintiff is entitled to:

(a) compensatory damages;
(b) injunctive relief compelling correction of false filings;
(c) declaratory relief;

(d) punitive damages against individual defendants;

(e) attorney's fees and costs pursuant to **42 U.S.C. § 1988**.

---

## FOURTH CAUSE OF ACTION

42 U.S.C. § 1983 — FIRST AMENDMENT RETALIATION

Against All Defendants

193.
Plaintiff repeats and realleges paragraphs 1 through 192 as if fully set forth herein.

---

I. Legal Standard — Protected Speech and Retaliation

*(Second Circuit & Supreme Court Authority)*

194.
The First Amendment protects:

(a) the right to speak openly,

(b) the right to petition the government for redress of grievances,

(c) the right to criticize government conduct, and

(d) the right to demand correction of false governmental information.

195.
Government officials violate the First Amendment when they retaliate against a person for protected speech by subjecting them to adverse governmental action.
See:

- Hartman v. Moore, 547 U.S. 250 (2006);

- Nieves v. Bartlett, 139 S. Ct. 1715 (2019).

196.
The Second Circuit requires Plaintiff to show:

(1) he engaged in protected speech;

(2) defendants took adverse action; and

(3) the adverse action was motivated by Plaintiff's protected activity.

See:

- Dorsett v. County of Nassau, 732 F.3d 157 (2d Cir. 2013);

- Curley v. Village of Suffern, 268 F.3d 65 (2d Cir. 2001).

---

II. Plaintiff Engaged in Protected First Amendment Activity

197.
Plaintiff Buchanan engaged in protected speech by:

(a) challenging the fabricated felony narrative concerning Treasurer Ellis;
(b) submitting complaints, inquiries, and objections to procurement agencies and City officials;
(c) seeking clarification and correction of false Rule 11 filings;
(d) publicly and privately objecting to the municipal misconduct damaging KTB Electric;
(e) petitioning the government for accurate records and disclosure.

198.
Such conduct constitutes core First Amendment petitioning and speech rights.
See:

- Dougherty v. Town of N. Hempstead, 282 F.3d 83 (2d Cir. 2002);

- Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545 (2d Cir. 2001) (petitioning triggers strict First Amendment protection).

---

III. Defendants Took Adverse Action After Learning of Plaintiff's Protected Activity

199.
After Plaintiff Buchanan and others notified Defendants of the fabrication and demanded correction, Defendants escalated their unconstitutional conduct, including:

(a) re-filing Rule 11–certified submissions repeating known falsehoods;
(b) reaffirming the fabricated felony narrative despite being given documentary evidence of falsity;
(c) refusing to correct or withdraw prior filings;
(d) allowing procurement agencies to continue relying on false narratives;
(e) permitting public access to defamatory statements to continue.

200.
The Second Circuit holds that adverse action includes any conduct likely to deter a person of ordinary firmness from continuing to speak or petition.
See Davis v. Goord, 320 F.3d 346 (2d Cir. 2003).

201.
The City's retaliatory filings carried:

- the force of government authority,

- the weight of Rule 11 certification, and

- the foreseeable impact of destroying business interests,

and thus qualify as adverse actions.

---

IV. Retaliatory Motivation

202.
Defendants were motivated by retaliation because:

(a) Plaintiff's protected speech challenged the legitimacy of NYPD, KCDAO, and Corporation Counsel conduct;
(b) Plaintiff identified factual inaccuracies that undermined the City's litigation posture;

(c) the City escalated false assertions *after* being provided notice;

(d) the City sought to discredit Plaintiff's objections by maintaining fabricated information.

203.

Retaliatory motive may be inferred from:

- timing of actions,

- escalation after protected speech,

- defendants' hostility,

- refusal to correct known falsehoods.

See Espinal v. Goord, 558 F.3d 119 (2d Cir. 2009) (temporal proximity and escalation support inference of retaliation).

204.

Here, Defendants repeated false felony assertions only after Plaintiff and KTB Electric demanded correction — a classic indicator of unconstitutional retaliation.

---

## V. No Legitimate Government Interest Justified Defendants' Actions

205.

Defendants' actions were not legitimate exercises of government discretion. Instead, they:

(a) sought to conceal misconduct;

(b) attempted to reinforce a false narrative;

(c) punished Plaintiff for exposing governmental wrongdoing;

(d) weaponized public filings to damage Plaintiff's business interests.

206.

The Second Circuit makes clear that government actions motivated by retaliation rather than legitimate purpose violate the First Amendment.

See Curley, 268 F.3d at 73; Dorsett, 732 F.3d at 161.

---

## VI. State Action and Municipal Liability

207.

Municipal liability attaches because:

(a) NYPD, KCDAO, and Corporation Counsel acted under color of law;

(b) Corporation Counsel policymakers ratified the retaliatory filings;

(c) municipal litigation decisions constitute official City policy under Pembaur, Jeffes, and Mangino.

208.

The City is liable under Monell because the retaliatory conduct was:

- performed by policymakers,

- consistent with municipal custom,

- and ratified at the highest levels.

## VII. Injury to Plaintiff

209.
As a direct result of Defendants' retaliatory actions, Plaintiff Buchanan suffered:

(a) impairment of KTB Electric's certification status;
(b) loss of procurement eligibility;
(c) denial of public contract opportunities;
(d) damage to business reputation;
(e) lost income and future earnings;
(f) emotional distress;
(g) ongoing economic injury due to continued retaliatory publication.

210.
These harms are fully compensable under §1983.
See Gonzalez v. City of Schenectady, 728 F.3d 149 (2d Cir. 2013).

## VIII. Relief

211.
Plaintiff is entitled to:

(a) compensatory damages;
(b) punitive damages against individual defendants;
(c) declaratory relief recognizing the retaliation;
(d) injunctive relief requiring correction of false municipal filings;
(e) attorney's fees under 42 U.S.C. § 1988.

## FIFTH CAUSE OF ACTION

## 42 U.S.C. § 1983 — CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS

### Against All Defendants

**212.**
Plaintiff repeats and realleges paragraphs 1 through 211 as if fully set forth herein.

### I. Legal Standard — §1983 Conspiracy

*(Second Circuit & Supreme Court Authority)*

**213.**
A §1983 conspiracy exists where:

1. two or more persons,

2. acting under color of state law or jointly with state actors,

3.  reach an agreement, explicit or tacit,

4.  to act in concert to deprive a person of constitutional rights,

5.  and commit overt acts causing injury.

This standard is established in:

- **Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)**;

- **Dennis v. Sparks, 449 U.S. 24 (1980)**;

- **Ciambriello v. County of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002)**;

- **Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999)**.

**214.**
A conspiracy may be proven through circumstantial evidence and coordinated action.
See **Romer v. Morgenthau, 119 F. Supp. 2d 346 (S.D.N.Y. 2000)**.

**215.**
Private defendants are liable when they jointly participate with, or are willful participants in, unconstitutional conduct by state actors.
See:

- **Dennis**, supra;

- **Lugar v. Edmondson Oil Co., 457 U.S. 922, 941–42 (1982)**;

- **Ciambriello**, supra.

---

## II. Defendants Entered Into an Agreement to Fabricate and Preserve a False Felony Narrative

**216.**
NYPD personnel, KCDAO officials, Corporation Counsel attorneys, and private defendants Lynn Jerome, Paula Sinclair, and Daniel Friedman **jointly participated in the creation, approval, maintenance, and public dissemination of a fabricated felony narrative** concerning Treasurer Gilbert Ellis.

**217.**
This coordinated conduct demonstrates a shared unlawful objective:
(a) fabricate a felony accusation;
(b) adopt it without investigation;
(c) ratify it through municipal filings;
(d) misrepresent it in federal court;
(e) suppress exculpatory evidence;
(f) conceal the absence of judicial process;
(g) destroy KTB Electric's business and certification status.

**218.**
The Second Circuit holds that **fabricated charges supported by coordination between police, prosecutors, and other actors constitute a conspiracy under §1983**.
See **Ricciuti**, 124 F.3d at 130–31; **Zahrey**, 221 F.3d at 349–50.

## III. Overt Acts in Furtherance of the Conspiracy

**219.**

In furtherance of their agreement, Defendants committed overt acts, including:

(a) NYPD fabricated felony allegations and entered false records;
(b) KCDAO adopted and perpetuated these allegations without investigation;
(c) ADA Carroll falsely asserted that a "sealed case" existed;
(d) Corporation Counsel filed Rule 11–certified documents falsely asserting judicial process;
(e) municipal policymakers ratified the misconduct;
(f) private defendants repeated false allegations in civil filings;
(g) Defendants refused to correct known falsehoods even after notice;
(h) Defendants allowed procurement agencies to rely on false filings;
(i) Defendants enabled ongoing publication through publicly accessible federal dockets.

**220.**

Overt acts supporting conspiracy liability include any coordinated behavior, defamation, fabrication, or suppression that advances the unlawful objective.
See **Pangburn**, 200 F.3d at 72–73.

## IV. Joint Action Between State and Private Defendants

**221.**

Private defendants Jerome, Sinclair, and Friedman were **knowing participants** because:

(a) they initiated or amplified false allegations;
(b) their statements became the foundation for NYPD and KCDAO actions;
(c) they continued to promote the fabricated narrative even after recantation or contradictory evidence emerged.

**222.**

This satisfies the **joint action test** for conspiratorial liability.
See:

- **Dennis**, 449 U.S. at 28;

- **Lugar**, 457 U.S. at 941–42;

- **Ciambriello**, 292 F.3d at 324–25.

## V. Purpose of the Conspiracy — Violating Plaintiff's Constitutional Rights

**223.**

Defendants conspired for the unlawful purpose of:

(a) depriving Plaintiff of his Fourteenth Amendment liberty interest (stigma-plus);
(b) damaging his property interests in KTB Electric;
(c) suppressing exculpatory information;
(d) preventing correction of false records;
(e) retaliating against Plaintiff for protected speech;

(f) impairing KTB Electric's certification and contracting rights;

(g) harming the business reputations of KTB Electric's owners.

**224.**

The Second Circuit recognizes that conspiracies involving fabrication, suppression, retaliation, and economic harm violate the Constitution.

See:

- **Zahrey**, supra;

- **Ricciuti**, supra;

- **San Filippo v. Bongiovanni**, 30 F.3d 424 (3d Cir. 1994) (cited favorably within Second Circuit retaliation jurisprudence).

## VI. Injury Caused by the Conspiracy

**225.**

As a direct and foreseeable result of Defendants' conspiracy, Plaintiff Buchanan suffered:

(a) loss of procurement opportunities;

(b) impaired M/WBE certification;

(c) diminished business goodwill;

(d) reputational and financial damage;

(e) loss of contract awards;

(f) loss of future earnings;

(g) emotional distress;

(h) ongoing stigma due to continued publication.

**226.**

Second Circuit precedent confirms these harms are compensable under §1983 conspiracy.

See **Kerman**, 374 F.3d at 125–27; **Valmonte**, 18 F.3d at 1001–05.

## VII. State Action and Municipal Liability

**227.**

All conspiratorial acts occurred under color of state law because:

(a) NYPD, KCDAO, and Corporation Counsel are government actors;

(b) private defendants acted jointly with and were empowered by state officials;

(c) municipal policymakers ratified the conspiracy.

**228.**

Under **Monell**, the City is responsible because the conspiracy was:

- carried out by policymakers,

- consistent with existing municipal customs,

- and preserved through municipal litigation conduct.

## VIII. Relief

**229.**
Plaintiff is entitled to:

(a) compensatory damages;
(b) punitive damages against individual defendants;
(c) injunctive relief to correct municipal false records;
(d) declaratory relief;
(e) attorney's fees under **42 U.S.C. § 1988**.

---

## SIXTH CAUSE OF ACTION

## 42 U.S.C. § 1985(3) — CIVIL RIGHTS CONSPIRACY TO DEPRIVE EQUAL PROTECTION

**Against All Defendants**

**230.**
Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein.

---

## I. Legal Standard — §1985(3) Conspiracy

*(Supreme Court & Second Circuit Authority)*

**231.**
To state a claim under 42 U.S.C. §1985(3), Plaintiff must allege:

1. a conspiracy;

2. for the purpose of depriving a person of equal protection of the laws or equal privileges and immunities;

3. an act in furtherance of the conspiracy;

4. whereby Plaintiff was injured or deprived of a federal right.

See:

- **Griffin v. Breckenridge, 403 U.S. 88 (1971);**

- **United Bhd. of Carpenters v. Scott, 463 U.S. 825 (1983);**

- **Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087–88 (2d Cir. 1993);**

- **Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999).**

**232.**
The Second Circuit has long held that **retaliatory, malicious, or selective targeting animus qualifies** under §1985(3) when the conspiracy's objective is to deprive equal protection. See:

- **Keating v. Carey, 706 F.2d 377 (2d Cir. 1983);**

Page **42** of **57**

- **Pangburn v. Culbertson, 200 F.3d 65 (2d Cir. 1999).**

## II. Existence of a Conspiracy Among State and Private Actors

**233.**

Defendants—including NYPD officers, KCDAO personnel, Corporation Counsel attorneys, and private defendants Lynn Jerome, Paula Sinclair, and Daniel Friedman—**entered into a coordinated agreement** to fabricate, endorse, preserve, and publicly disseminate a false felony narrative concerning Treasurer Gilbert Ellis.

**234.**

This multiparty agreement is demonstrated by:

(a) coordinated acceptance of false accusations;
(b) unified suppression of exculpatory information;
(c) coordinated municipal filings repeating fabricated allegations;
(d) repeated refusal to correct falsehoods after notice;
(e) intentional amplification of the false felony narrative;
(f) combined actions causing procurement, certification, and reputational harm to KTB Electric, Inc.

**235.**

Second Circuit precedent holds that conspiracies may be inferred from coordinated conduct. See **Pangburn**, 200 F.3d at 72; **Romer v. Morgenthau, 119 F. Supp. 2d 346 (S.D.N.Y. 2000)**.

## III. Discriminatory or Unlawful Animus

**236.**

The conspiracy was motivated by unlawful animus, including:

(a) **retaliatory animus** against Plaintiff and KTB Electric for challenging municipal misconduct;
(b) **economic-targeting animus**, aiming to destroy the business reputation and economic viability of the M/WBE-certified company;
(c) **selective enforcement animus**, treating Plaintiff and KTB Electric differently from similarly situated businesses;
(d) **animus toward Plaintiff's exercise of First Amendment rights**, including petitioning and speaking out.

**237.**

The Second Circuit recognizes animus based on retaliation, selective enforcement, or malicious targeting as sufficient to satisfy §1985(3).
See:

- **Keating**, 706 F.2d at 386;

- **Mian**, 7 F.3d at 1088;

- **Pangburn**, supra.

## IV. Overt Acts in Furtherance of the Conspiracy

**238.**

Defendants committed numerous overt acts, including:

(a) creating false NYPD reports;
(b) adopting fabricated allegations without investigation;
(c) falsely asserting that judicial proceedings and sealing orders existed;
(d) filing Rule 11–certified documents repeating known falsehoods;
(e) suppressing exculpatory information;
(f) enabling procurement agencies to rely on false filings;
(g) maintaining public access to defamatory government documents;
(h) amplifying stigma through federal litigation conduct.

**239.**

Such overt acts satisfy §1985(3)'s requirement that conspirators take concrete steps to deprive a plaintiff of federal rights.
See **Thomas v. Roach**, 165 F.3d at 147.

---

## V. Purpose of the Conspiracy — Deprivation of Equal Protection

**240.**

The conspiracy was undertaken for the purpose of depriving Plaintiff of **equal protection of the laws** by:

(a) subjecting KTB Electric to stigmatizing government misinformation not applied to others;
(b) imposing procurement barriers solely because of fabricated allegations;
(c) depriving Plaintiff of equal economic and business-rights protections;
(d) targeting Plaintiff and his business for reputational destruction;
(e) impairing Plaintiff's access to certification and contractual benefits available to similarly situated companies.

**241.**

Selective targeting and malicious impairment of one's business or occupation violate equal protection.
See:

- **Bizzarro v. Miranda, 394 F.3d 82, 87–88 (2d Cir. 2005)**;

- **Zahrey**, supra (fabrication causing professional harm violates constitutional rights).

---

## VI. Resulting Injury to Plaintiff

**242.**

As a direct and foreseeable result of Defendants' conspiracy, Plaintiff Buchanan suffered:

(a) loss of business income;
(b) impaired M/WBE certification;
(c) denial of procurement opportunities;
(d) damaged business goodwill;
(e) reputational harm in the contracting community;
(f) emotional distress;
(g) ongoing stigma due to continued municipal republication.

**243.**
These injuries constitute actionable harm under §1985(3).
See **Keating, Pangburn, Scott,** supra.

## VII. State Action — Private Actors Are Equally Liable

**244.**
Private defendants acted **jointly and intentionally** with state actors, satisfying the "state involvement" requirement.
See:

- **Dennis v. Sparks,** 449 U.S. 24, 28 (1980);

- **Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982);**

- **Ciambriello,** 292 F.3d at 324–25.

**245.**
Their conduct cannot be separated from that of NYPD, KCDAO, and Corporation Counsel—it was part of a unified plan to inflict harm on Plaintiff and KTB Electric.

## VIII. Relief

**246.**
Plaintiff is entitled to:

(a) compensatory damages;
(b) punitive damages against individual defendants;
(c) declaratory relief acknowledging the existence of the conspiracy;
(d) injunctive relief requiring correction of false municipal filings;
(e) attorney's fees under **42 U.S.C. § 1988.**

## SEVENTH CAUSE OF ACTION

## 42 U.S.C. § 1986 — NEGLECT TO PREVENT A §1985 CONSPIRACY

## Against All Defendants with Knowledge and Authority to Intervene

**247.**
Plaintiff repeats and realleges paragraphs 1 through 246 as if fully set forth herein.

## I. Legal Standard — §1986 Liability

*(Supreme Court & Second Circuit Authority)*

**248.**
Section 1986 creates liability for individuals who:

1. have **knowledge** that a §1985 conspiracy is occurring;

Page **45** of **57**

2. possess the **power to prevent or aid in preventing** the conspiracy;

3. **neglect or refuse** to act;

4. and injury results.

This standard is established in:

- **Morse v. University of Vermont, 973 F.2d 122, 127–28 (2d Cir. 1992)**;

- **Brown v. City of Oneonta, 221 F.3d 329, 341 (2d Cir. 2000)**;

- **Clark v. Clabaugh, 20 F.3d 1290 (3d Cir. 1994)** (widely cited in SDNY).

**249.**

§1986 is a **derivative statute**: once a §1985(3) conspiracy is plausibly established, any actor who knew of it and failed to intervene may be held liable.

---

## II. Defendants Had Actual Knowledge of the §1985 Conspiracy

**250.**

The following defendants had actual knowledge of the conspiracy to fabricate, preserve, and disseminate a false felony narrative targeting Treasurer Ellis, which foreseeably damaged Plaintiff Buchanan and KTB Electric:

(a) **Corporation Counsel policymakers** (Muriel Goode-Trufant, Joseph Zangrilli),
(b) **Assistant Corporation Counsel Hannah Oleynik,**
(c) **ADA Richard Farrell,**
(d) **ADA John Carroll,**
(e) **NYPD supervisors,**
(f) **KCDAO investigators,**
(g) **Officers who processed or approved fabricated reports,**
(h) **Private defendants Jerome, Sinclair, and Friedman,** who knew their statements were false.

**251.**

These individuals knowingly participated in or observed:

- the creation of false NYPD records;

- the absence of any judicial process;

- falsification of Rule 11 filings;

- suppression of exculpatory documents;

- continued dissemination of false filings;

- procurement harm caused by these actions.

**252.**

Knowledge may be inferred where defendants were repeatedly placed on notice of falsity yet continued to act.
See **Morse**, supra; **Brown**, supra.

Page **46** of **57**

## III. Defendants Had the Power to Prevent or Mitigate the Conspiracy

**253.**

Each defendant had authority to halt or prevent the conspiracy, including the ability to:

(a) correct fabricated NYPD reports;
(b) withdraw false KCDAO assertions;
(c) amend or retract false Rule 11 filings;
(d) disclose exculpatory information;
(e) notify procurement agencies of inaccuracies;
(f) halt republication of false allegations;
(g) discipline or report misconduct by other officials.

**254.**

Municipal policymakers had full authority to:

- correct filings,

- disclose that no criminal case existed,

- authorize remedial action,

- cease litigation positions that perpetuated violations.

**255.**

The Second Circuit holds that supervisory and policymaking officials have **actionable duties** to intervene when constitutional violations occur.
See:

- **Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)**;

- **Brandon v. Kinter, 938 F.3d 21 (2d Cir. 2019)** (supervisors liable when they fail to act despite knowledge).

## IV. Defendants Neglected or Refused to Act

**256.**

Despite knowledge and authority, Defendants **neglected or refused to prevent or stop the conspiracy**, as evidenced by:

(a) refusal to correct known falsehoods;
(b) continued filing of Rule 11–certified false statements after notice;
(c) allowing fabricated NYPD and KCDAO records to remain uncorrected;
(d) intentional withholding of exculpatory material;
(e) failure to alert procurement agencies or certification bodies;
(f) refusal to amend public filings to reflect factual truth;
(g) permitting ongoing online publication of defamatory government documents.

**257.**

The Second Circuit recognizes that deliberate indifference or intentional non-action qualifies as "neglect" under §1986.
See **Morse**, 973 F.2d at 127–28.

## V. The Neglect Directly Caused Plaintiff's Injuries

**258.**

Because defendants chose not to intervene, Plaintiff Buchanan suffered:

(a) impaired M/WBE certification;
(b) denial of contract awards;
(c) loss of procurement eligibility;
(d) damage to business goodwill;
(e) reputational injury;
(f) financial losses;
(g) emotional distress;
(h) ongoing stigma due to continued republication of fabricated allegations.

**259.**

Under §1986, any injury flowing from the unprevented §1985 conspiracy is compensable.

## VI. Timeliness — Continuing Violation Doctrine

**260.**

Defendants' neglect continues each day they:

(a) allow false filings to remain online;
(b) permit procurement agencies to rely on false information;
(c) refuse to correct or withdraw fabricated statements.

**261.**

The Second Circuit recognizes continuing §1986 liability where violations persist.
See **Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009)**.

## VII. Relief

**262.**

Plaintiff is entitled to:

(a) compensatory damages;
(b) punitive damages against individual defendants;
(c) declaratory relief;
(d) injunctive relief requiring correction of municipal false records;
(e) attorney's fees under **42 U.S.C. § 1988**.

## EIGHTH CAUSE OF ACTION

## 42 U.S.C. § 1983 — FAILURE TO INTERVENE

### Against All Individual Defendants Who Had Knowledge and Opportunity to Act

**263.**

Plaintiff repeats and realleges paragraphs 1 through 262 as if fully set forth herein.

## I. Legal Standard — Duty to Intervene

*(Second Circuit Authority)*

**264.**
The Second Circuit has long held that **any officer or state actor who has a realistic opportunity to prevent another officer's constitutional violation, yet fails to do so, is liable under §1983.**
See:

- **Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)** ("All law enforcement officials have an affirmative duty to intercede.");

- **Figueroa v. Mazza, 825 F.3d 89, 106 (2d Cir. 2016)** (duty applies broadly to supervisory and non-supervisory actors);

- **O'Neill v. Krzeminski, 839 F.2d 9, 11–12 (2d Cir. 1988)** (opportunity to intervene imposes liability).

**265.**
This duty applies not only to physical misconduct, but to **fabrication of evidence, suppression of exculpatory material, unconstitutional prosecution, malicious misuse of legal processes, and constitutional violations arising from litigation conduct.**

Courts have applied failure-to-intervene to **all forms of constitutional injury**, not solely excessive force.

## II. Defendants Had Actual Knowledge of Constitutional Violations

**266.**
The following defendants were aware that constitutional violations were occurring:

(a) NYPD officers (Kush, Couch, Alva, Crawford, Piscatella);
(b) KCDAO officials (ADA Farrell, ADA Carroll, KCDAO investigators);
(c) Corporation Counsel attorneys (Goode-Trufant, Zangrilli, Oleynik);
(d) Private defendants who knowingly supplied false allegations (Jerome, Sinclair, Friedman).

**267.**
These individuals had direct or constructive knowledge that:

- felony allegations were fabricated;

- no judicial process ever occurred;

- no docket, complaint, summons, or arraignment existed;

- sealing statutes were falsely invoked;

- Rule 11 filings contained false factual statements;

- procurement agencies were relying on those filings;

- KTB Electric was being harmed by those false filings;

- Plaintiff Buchanan's property and liberty interests were being violated.

**268.**
Knowledge may be inferred where defendants are notified of falsity through documents, FOIL responses, objections, letters, and procedural inconsistencies.
See **Branen**, supra.

---

## III. Defendants Had the Ability and Opportunity to Intervene

**269.**
Each defendant had the authority and opportunity to stop or prevent the constitutional violations by:

(a) correcting the fabricated NYPD records;
(b) refusing to adopt or repeat false allegations;
(c) disclosing exculpatory information;
(d) amending or withdrawing false Rule 11 filings;
(e) notifying procurement agencies of inaccuracies;
(f) halting the republication of fabricated allegations;
(g) directing subordinates to cease unconstitutional conduct;
(h) preventing ongoing constitutional injury to KTB Electric and Plaintiff Buchanan.

**270.**
Under **Figueroa**, individuals with supervisory or approval authority have a heightened duty to intervene.

**271.**
Corporation Counsel policymakers had absolute authority to correct, withdraw, or amend false filings—but chose not to act.

**272.**
KCDAO officials had the ability to clarify that no criminal case existed—but chose not to act.

**273.**
NYPD supervisors had the ability to correct false entries in police systems—but chose not to act.

---

## IV. Defendants Deliberately Failed to Intervene

**274.**
Despite knowledge and opportunity, Defendants:

(a) failed to correct false allegations;
(b) allowed fabricated evidence to stand unchallenged;
(c) refused to admit that no judicial process had occurred;
(d) suppressed exculpatory information;
(e) repeated falsehoods in official documents;
(f) ignored demands to correct or clarify filings;
(g) permitted procurement and certification harm to continue;
(h) did nothing to stop the City's ongoing republication of defamatory content.

**275.**

Their non-action was intentional or recklessly indifferent, meeting the Second Circuit standard for failure to intervene.

See **Figueroa**, 825 F.3d at 107 (liability attaches where defendants "consciously refrained from preventing" violations).

## V. The Failure to Intervene Caused Plaintiff's Injuries

**276.**

Defendants' combined refusal to act directly caused:

(a) impaired M/WBE certification;
(b) denial of procurement opportunities;
(c) damage to KTB Electric's reputation and integrity rating;
(d) loss of contract awards and future revenue;
(e) stigma-plus constitutional injury;
(f) emotional and economic harm to Plaintiff Buchanan.

**277.**

These injuries flow directly from the failure of multiple officials at multiple agencies to intervene.

## VI. Municipal Liability

**278.**

Under **Monell**, the City is liable because the failure to intervene was:

(a) widespread,
(b) consistent with established municipal customs,
(c) ratified by policymakers, and
(d) a predictable result of the City's inadequate training and supervision.

**279.**

Corporation Counsel's ratification of false filings, despite knowledge of fabrication, constitutes municipal approval of constitutional violations.
See **Jeffes v. Barnes, 208 F.3d 49 (2d Cir. 2000)**.

## VII. Relief

**280.**

Plaintiff is entitled to:

(a) compensatory damages;
(b) punitive damages against individual defendants;
(c) equitable relief requiring correction of false records;
(d) declaratory relief;
(e) attorney's fees and costs under **42 U.S.C. § 1988**.

**NINTH CAUSE OF ACTION**

**DAMAGES AND DEMAND FOR JURY TRIAL**

**(With Second Circuit Authority)**

**281.**
Plaintiff repeats and realleges paragraphs 1 through 280 as if fully set forth herein.

**I. Compensatory Damages**

**282.**
As a direct and foreseeable result of Defendants' fabrication of evidence, false publications, malicious litigation conduct, retaliation, conspiracy, and constitutional violations, Plaintiff **Linval Buchanan** suffered substantial **economic, professional, reputational, and emotional injury**, including but not limited to:

(a) loss of M/WBE certification opportunities;
(b) impairment of procurement eligibility;
(c) denial of public and private contract awards;
(d) significant loss of business goodwill and reputation;
(e) damage to KTB Electric's integrity rating;
(f) diminished revenue and reduced profitability;
(g) loss of future business prospects;
(h) reputational stigma in the contracting, electrical, and M/WBE markets;
(i) emotional distress, humiliation, and mental anguish.

**283.**
The Second Circuit recognizes that compensatory damages are recoverable for:

- economic loss,

- loss of business opportunity,

- reputational injury,

- and emotional harm

resulting from constitutional violations.

See:

- **Kerman v. City of New York, 374 F.3d 93, 125–27 (2d Cir. 2004)** (compensatory damages for emotional distress and reputational injury);

- **Valmonte v. Bane, 18 F.3d 992 (2d Cir. 1994)** (damages for stigma-plus and impairment of employment opportunities);

- **Patterson v. City of Utica, 370 F.3d 322 (2d Cir. 2004)** (compensatory damages for reputational and occupational harm).

**284.**
Each of these injury categories is independently compensable and collectively represents substantial harm to Plaintiff's constitutional rights and business interests.

## II. Special Damages — Business, Certification, and Procurement Losses

**285.**

Plaintiff is entitled to special damages representing direct financial losses sustained by **KTB Electric, Inc.**, in proportion to his 30% ownership interest, including:

(a) lost government contracts;
(b) lost private subcontracting opportunities;
(c) denied or delayed M/WBE certification benefits;
(d) lost vendor prequalification opportunities;
(e) diminished future earning capacity of the business;
(f) reduced enterprise valuation.

**286.**

Federal courts recognize such losses as constitutionally compensable when caused by state-created stigma or property-interest deprivation.
See:

- **Spinelli v. City of New York, 579 F.3d 160 (2d Cir. 2009)** (loss of business value and contract rights);

- **O'Connor v. Pierson, 426 F.3d 187 (2d Cir. 2005)** (loss tied to professional reputation and employment prospects).

## III. Constitutional Damages — Stigma-Plus & Property-Interest Deprivation

**287.**

Plaintiff is entitled to damages arising from:

(a) **stigma-plus defamation**,
(b) impairment of occupational and business liberty,
(c) deprivation of property interests (goodwill, certification, procurement eligibility),
(d) municipal ratification of fabricated allegations.

**288.**

The Second Circuit authorizes damages for these injuries.
See:

- **Valmonte**, supra;

- **Segal v. City of New York, 459 F.3d 207 (2d Cir. 2006)**;

- **Spinelli**, supra.

## IV. Emotional Distress Damages

**289.**

As a direct result of Defendants' misconduct, Plaintiff experienced:

(a) humiliation,
(b) anxiety,

Page **53** of **57**

(c) reputational shame,

(d) loss of professional standing,

(e) emotional and psychological harm.

**290.**

Emotional distress damages are recoverable under §1983 without physical injury.
See **Kerman**, 374 F.3d at 125–27.

---

## V. Punitive Damages (Against Individual Defendants)

**291.**

Punitive damages are warranted because the individual defendants acted:

(a) with malice,

(b) with reckless disregard for Plaintiff's constitutional rights,

(c) knowingly falsifying or perpetuating false criminal allegations,

(d) intentionally harming Plaintiff's business and reputation.

**292.**

Punitive damages are authorized under **Smith v. Wade, 461 U.S. 30 (1983)** and are routinely applied in the Second Circuit for malicious or reckless constitutional violations.
See **Ismail v. Cohen, 899 F.2d 183 (2d Cir. 1990)**.

---

## VI. Injunctive Relief

**293.**

Plaintiff seeks injunctive relief requiring Defendants to:

(a) correct false Rule 11 filings;

(b) publicly retract fabricated allegations;

(c) notify procurement and certification agencies of the falsity;

(d) remove or amend unconstitutional municipal records;

(e) cease ongoing republication of fabricated allegations.

**294.**

Injunctive relief is appropriate where, as here, the violation is ongoing and continues to inflict new harm.
See:

- **Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009)**;

- **Valmonte**, supra.

---

## VII. Declaratory Relief

**295.**

Plaintiff seeks a declaration that:

(a) the fabricated felony allegations were false;
(b) municipal filings repeating them violate the Constitution;
(c) the City's republication constitutes a continuing constitutional injury.

Declaratory relief is authorized under **28 U.S.C. §§ 2201–2202**.

## VIII. Attorney's Fees and Costs

**296.**
Plaintiff is entitled to attorney's fees and costs under **42 U.S.C. § 1988**, as this action enforces rights under:

- §1983

- §1985

- §1986

- the First and Fourteenth Amendments.

The Second Circuit strongly favors fee awards in meritorious civil rights actions.
See **Hensley v. Eckerhart, 461 U.S. 424 (1983)**.

## IX. Demand for Jury Trial

**297.**
Pursuant to **Federal Rule of Civil Procedure 38** and the Seventh Amendment to the United States Constitution, Plaintiff **demands a trial by jury** on all claims and issues so triable.

The Second Circuit recognizes that factual disputes in §1983 actions must be resolved by a jury.
See **Kerman, Ismail**, and **Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996)**.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff **Linval Buchanan**, by and through his own efforts as a pro se litigant, respectfully requests that this Court enter judgment in his favor and against all Defendants, jointly and severally where permitted by law, and award the following relief:

## A. Declaratory Relief

**298.**
A declaration pursuant to 28 U.S.C. §§ 2201–2202 that:

(a) Defendants' fabrication of felony allegations, false Rule 11 filings, suppression of exculpatory evidence, and ongoing republication of false information violated Plaintiff's rights under the First and Fourteenth Amendments;
(b) the City's Rule 11–certified filings in federal court contained materially false and misleading factual assertions;
(c) no lawful felony arrest, criminal proceeding, arraignment, docket, or sealing order ever

existed for Treasurer Gilbert Ellis;

(d) Defendants' conduct caused direct economic, reputational, certification, and procurement injury to Plaintiff as a business owner;

(e) Defendants' ongoing republication of false information constitutes a continuing constitutional violation.

## B. Injunctive Relief

**299.**

Preliminary and permanent injunctive relief requiring that:

(a) The City of New York, Corporation Counsel, NYPD, and KCDAO **correct, amend, or withdraw** all filings, reports, records, and representations that contain fabricated or false statements concerning Treasurer Ellis;

(b) Defendants formally notify NYC and NYS M/WBE certification agencies, procurement offices, and any relevant contracting authorities that the allegations were fabricated and the government filings were erroneous;

(c) All municipal records falsely identifying Ellis as having been arrested, arraigned, charged, or sealed be **purged, corrected, or replaced**;

(d) The City cease publishing or disseminating the fabricated felony narrative;

(e) Any publicly accessible online records containing false allegations be **corrected or removed**.

## C. Compensatory, Economic, and Special Damages

**300.**

Compensatory damages in an amount to be determined at trial, including but not limited to:

(a) loss of business opportunity;

(b) loss of contract awards;

(c) impairment of M/WBE certification status;

(d) diminished procurement eligibility;

(e) loss of goodwill, reputation, and integrity standing;

(f) lost income and future earnings;

(g) emotional distress, mental anguish, and humiliation;

(h) all other economic and consequential damages caused by Defendants' conduct.

## D. Punitive Damages

**301.**

Punitive damages against all individual Defendants acting outside the scope of immunity and within the scope of **Smith v. Wade, 461 U.S. 30 (1983)**, for conduct that was malicious, reckless, oppressive, or in callous disregard of Plaintiff's constitutional rights.

## E. Attorneys' Fees and Costs

**302.**

An award of attorneys' fees and costs pursuant to **42 U.S.C. § 1988**, and any other applicable

statute, even though Plaintiff proceeds pro se, with fees becoming applicable if counsel appears at any later stage.

## F. Pre- and Post-Judgment Interest

**303.**

An award of pre-judgment and post-judgment interest as permitted by law to fully compensate Plaintiff for the losses sustained.

## G. Any Further Relief the Court Deems Just and Proper

**304.**

Such other and further relief as this Court deems equitable, just, and proper, including supervisory directives, corrective orders, or structural relief concerning municipal policies and practices implicated in this action.

## DEMAND FOR JURY TRIAL

**305.**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Plaintiff **demands a trial by jury** on all issues so triable.

**Linval Buchanan**
Plaintiff, Pro Se
623 Beach 64th Street
Arverne, NY 11692
Email: buchananlinval@gmail.com